UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE



2019 NOV 18  A 9: 55

RICHARD ST. PIERRE, IDA ST.　)
PIERRE　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　)
　　vs.　　　　　　　　　　　　)　CIVIL NO. _____
　　　　　　　　　　　　　　　)
WELLS FARGO HOME MORTGAGE, )
WELLS FARGO BANK, N.A. ,　　　)　JURY TRIAL DEMANDED
FEDERAL NATIONAL MORTGAGE　)
ASSOCIATION . AS  TRUSTEE FOR )
FANNIE MAE GUARANTEED REMIC )
PASS-THROUGH CERTIFICATES　)
FANNIE MAE REMIC TRUST 2009-1 )
& DOES 1-100 INCLUSIVE.　　　)
　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　)

**PLAINTIFF'S COMPLAINT FOR: DETRIMENTAL RELIANCE , FRAUD IN THE CONCEALMENT,
FRAUD IN THE INDUCEMENT, UNCONSCIONABLE CONTRACTS, BREACH OF CONTRACT,
BREACH OF FIDUCIARY DUTY, QUIET TITLE, SLANDER OF TITLE,**

COMES NOW the Plaintiff, RICHARD ST. PIERRE, IDA ST. PIERRE ("Plaintiff"), complaining

of the Defendants as named above, and each of them, as follows:

## JURISDICTION AND VENUE

1.　　This Court has subject matter jurisdiction pursuant to the following statutes:

(a)15 U.S.C. § 1331, providing for "original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States"; and (e) 15 U.S.C. §

1367, providing for "supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part

of the same case or controversy." This Court also has jurisdiction over the claims because this case involves New York common law trusts.

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345; under 12 U.S.C. § 5565(a)(1) with respect to CFPA claims and.

3.    Venue is proper in this District under 28 U.S.C. §1391(b)(1), because Defendants are residents of and/or conduct business in this District. This Court has personal jurisdiction over Defendants because they are residents of and/or conduct business in this District and under Florida State 's long arm statute. The claims also relate to The FANNIE MAE 's role as trustee over a trust created under New York law and/or administered at least in part in New York.

## PARTIES

4    Plaintiffs are residents of 115 Brentwood Road, Exeter, N.H. 03833, Rockingham County and are, in all respects material hereto, sui juris.

5.    Defendant, Federal National Mortgage Association as Trustee for Fannie Mae REMIC Trust 2009-1, is a securitized trust organized and existing under the laws of New York and New Hampshire State , and is doing business throughout this district. Defendant can be served with process by servings at . Defendant Wells Fargo Home Mortgage . is the servicer of the loan and is headquartered in 1100 15th St., N.W. Washington, D.C. 20005.

Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## GENERAL ALLEGATIONS

11.    On June 19, 2006  Plaintiff  RICHARD ST. PIERRE, IDA ST. PIERRE (RICHARD ST. PIERRE, IDA ST. PIERRE,) financed . (the "property") at 115 Brentwood Road, Exeter, NH 03833. The lender is the now Gannie Mae REMIC Trust 2009-1)

12.    A forensic audit (the "audit") have been  performed on the property  . The audit from Certified Forensic Loan Auditors on Sept. 27, 2017   (Exhibit 1) shows that there has been a break in the chain of title and found that the original deed from 1  was never assigned to  Fannie Mae  as trustee for the GSAMP Trust 2006-HE5.

Findings of Fact :

1. The St. Pierre 's borrowed money from CitiMortgage   and executed a promissory note dated June 16, 2008.
2. The St. Pierre's secured the loan with a mortgage of $320,000.
3. The St. Pierre's are the recorded owners of the property located at 115 Brentwood Road, Exeter, NH 03833.

4. There is no endorsement on the Note.

5. There is no evidence, beyond the St. Pierre's loan being listed in the PSA's undated and undetached Mortgage Loan Schedule, that the note and mortgage was properly and timely deposited into the securitization trust of which Defendant's claim to be the trustee.

6. There is no evidence from the Mortgage Loan Schedule of the PSA as to how or when the loan was deposited into the Trust or when the mortgage loan schedule was created.

7. There is no evidence of a claimed assignment in the securitization of the loan per the PSA, or an assignment to the current trustee.

8. Defendant has presented no evidence from the MERS system or otherwise that establishes that the St. Pierre's note and mortgage followed the process outlined in the PSA.


Andrew Lehman ( auditor ) was retained by RICHARD ST. PIERRE, IDA ST. PIERRE to review the chain of title for the Mortgage Deed and Note originated by in the amount of $320,000 which is the subject of this action. I was asked to point out any discrepancies or issues of fact regarding the chain of title and ownership claims to the Mortgage Deed, and to render an opinion as to any defects, deficiencies, and/or fraud should they exist.

12. The following documents were inspected and marked as exhibits:

16. Pursuant to Mr/. RICHARD ST. PIERRE, IDA ST. PIERRE, he has not received any notification that their loan was purchased by any other entity as required by 15 U.S.C. §1641(g).

17. I ran a search of the RICHARD ST. PIERRE, IDA ST. PIERRE Mortgage Deed in the Rockingham County, New Hampshire.

18. From my experience as both an investigator and my years in the mortgage industry, loans purchased by the Fannie Mae REMIC Trust 2009-1 such as FANNIE MAE and Trust where acquired at or very near the time of loan origination.

19. If the RICHARD ST. PIERRE, IDA ST. PIERRE loan was indeed sold to FANNIE MAE soon after origination, as evidence suggests, there have been no assignments or endorsements of the Note to FANNIE MAE which was required by

20. From experience investigating cases involving FANNIE MAE , I have read

and reviewed this entity's policies and procedures which they provide to the public at their website: "Note Endorsement" and

"Signature Requirements for Endorsements" are provided at FANNIE MAE 's website:

## Note Endorsement

The originating lender must be the original payee on the note, even when MERS is named as nominee for the beneficiary in the security instrument. The note must be endorsed to each subsequent owner of the mortgage unless one or more of the owners endorsed the note in blank. The last endorsement on the note should be that of the mortgage seller. The mortgage seller must endorse the note in blank and without recourse.

For example:

PAY TO THE ORDER OF

WITHOUT RECOURSE

LENDER'S NAME

(Authorized Signature)

NAME OF AUTHORIZED SIGNER

TITLE OF AUTHORIZED SIGNER

**Signature Requirements for Endorsements**

The endorsement should be signed only by those persons specifically authorized to execute documents in the lender's behalf. Signatures must be original, except that FANNIE MAE accepts a lender's facsimile endorsement of notes for those jurisdictions in which the lender has determined that such endorsements are valid and enforceable.

A lender that chooses to use facsimile signatures to endorse notes must warrant that the endorsement is valid and enforceable in the jurisdiction(s) in which the security properties are located and must retain in its corporate records the following specific documentation authorizing the use of facsimile signatures:

- legal opinions related to the legality and enforceability of facsimile signatures for each jurisdiction in which the lender uses them;
- a resolution from the lender's board of directors authorizing specific officers to use facsimile signatures, stating that facsimile signatures are a valid and binding act on the lender's part, and authorizing the lender's corporate secretary to certify the validity of the resolution, the names of the officers authorized to execute documents by using facsimile signatures, and the authenticity of specimen forms of facsimile signatures;
- the corporate secretary's certification of the authenticity and validity of the board of director's resolution;
- a notarized certification of facsimile signature, which includes both the facsimile and the original signatures of the signing officer(s) and each officer's certification that the facsimile is a true and correct copy of his or her original signature.

<u>The mortgage seller may not delegate to an attorney-in-fact its authority to execute an endorsement. The endorsement may not be executed by a party using a power of attorney.</u>

21.    There is an issue of fact as to the whereabouts of the "original" Note,

because investors such as FANNIE MAE would not have purchased a mortgage note without it being endorsed upon sale.

22. The subject Mortgage Deed was originated by CitiMortgage on June 16, 2008..

23.     In my experience investigating "document production mills" such as Nationwide Title Clearing, as well as many others, the forging and fabrication of mortgage documents continues to this day unabated. I am willing to educate the Court with an abundance of evidence to support my statement.

24. The RICHARD ST. PIERRE, IDA ST. PIERRE's attempted a series of attempts to get a loan modification, all of which were repeatedly delayed due to lost paperwork, claimed "incomplete" paperwork, and repeated re-assigned to new loan officers.

26.     In addition, and unbeknownst to Plaintiff, CitiMortgage (originator), illegally, deceptively, and/or otherwise unjustly qualified Plaintiffs for a loan which FANNIE MAE , N.A knew or should have known that Plaintiffs could not qualify for or afford. For example, the underwriter approved this loan based upon credit scores and the Plaintiffs "Stated Income". Had FANNIE MAE .used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining compliance, with the requirement to provide Plaintiffs with a Mortgage Loan Origination Agreement showing their debt to income ratio, Plaintiffs would not have qualified for the loan. Consequently, Southstar Funding,

LLC .approved Plaintiffs with a loan product that it knew or should have known

would never be able to be fully paid back by Plaintiffs. Wells Fargo Bank, N.A.

.ignored long-standing economic principals of underwriting and instead,

knowingly, greedily and without any regard for Plaintiffs' rights sold Plaintiffs a

deceptive loan product.   At all times material hereto Defendants knew of

FANNIE MAE 's actions and participated in them.

41.   On or about June 16, 2008 (the "Closing"), Plaintiff purchased the property

located at 115 Brentwood Road, Exeter, N.H. 03833 , Rockingham County

As a result of the constructive fraud on the RICHARD ST. PIERRE, IDA ST.

PIERRE's chain of title the Plaintiff hereby allege a violation of Federal Rule 60

(b)- FRAUD UPON THE COURT :

However, HRCP Rule 60(b) specifically allows for collateral proceedings when there is an
allegation of fraud upon the court, stating, "This rule does not limit the power of a court to
entertain an *independent action* to relieve a party from a judgment, order, or proceeding, or to set
aside a judgment for fraud upon the court." (Emphasis added.) Thus, like the policy favoring the
finality of judgments, the policy against collateral attacks on judgments is not absolute and does
not favor limiting liability in a collateral proceeding when there is an allegation that fraud was
committed in the prior proceeding

The second major point urged by appellant is that appellee practiced a fraud upon the court
in failing to disclose the alleged stipulation and the referee's notice of decision handed
down more than one month prior to filing the application.[7]
[7] In order to set aside a judgment or order because of fraud upon the court under Rule
60(b), Federal Rules of Civil Procedure, 28 U.S.C.A., it is necessary to show an
unconscionable plan or scheme which is designed to improperly influence the court in its
decision. Hazel-Atlas Glass Co. v. Hartford Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997,
88 L.Ed. 1250; Root Refining Co. v. Universal Oil Products Co., 3 Cir., 1948, 169 F.2d
514. The motion to set aside on this ground is addressed to the sound discretion of the trial
court. Title v. United States, 9 Cir., 1959, 263 F.2d 28; Siberell v. United States, 9 Cir.,
1959, 268 F.2d 61. And the burden is on the *310 moving party to establish fraud by clear
and convincing evidence. Atchison, Topeka & Santa Fe Ry. Co. v. Barrett, 9 Cir., 1957,

246 F.2d 846.
England v. Doyle 281 F.2d 304 (1960).

Plaintiff's retained the professional services of Meriquest, Beverly Hills, Ca. to assist in a loan modification and the following time line was attempted to no avail at getting a loan modification :

*** Alfreda Hill *** 8/1/2019, 3:47:31 PM PHONE CALL[p] - Sale date still scheduled for 8/27/19.

Mod was denied on 7/23/19 because the P&I increased by $380 and does not fall within the guidelines.

Denial docs attached.

*** Alfreda Hill *** 7/25/2019, 3:18:14 PM PHONE CALL[p] - File is still in review. Sale date is still scheduled for 8/27

*** Alfreda Hill *** 7/17/2019, 12:44:46 PM PHONE CALL[p] - File was marked as complete on 7/12 and is now in review with the UW.

There's a sale date scheduled for 8/27 and they said they won't postpone it because they should have a decision by then.

*** Alfreda Hill *** 7/9/2019, 12:09:43 PM NOTE[n] - RESUBMITTED.

*** Alfreda Hill *** 6/13/2019, 11:38:08 AM PHONE CALL[p] - Appeal denied today.

In active foreclosure but no sale date.

*** Alfreda Hill *** 6/5/2019, 11:08:58 AM PHONE CALL[p] - Appeal is still in review.

*** Alfreda Hill *** 5/29/2019, 12:31:05 PM PHONE CALL[p] - Appeal is still under review. Foreclosure is on hold.

*** Alfreda Hill *** 5/22/2019, 12:44:33 PM PHONE CALL[p] - Appeal is under review. No update yet.

Foreclosure active but no sale date at this time.

*** Alfreda Hill *** 5/15/2019, 11:11:06 AM NOTE[n] - Appeal sent.

*** Alfreda Hill *** 4/23/2019, 3:30:27 PM PHONE CALL[p] - Mod denied because the modified payment will be more than the pre-modified payment.

Loan already extended to 591 months so there's nothing else they can do.

Denial docs attached.

*** Alfreda Hill *** 4/16/2019, 12:16:18 PM

| PHONE | CALL[p] | - | File | is | still | pending | a | decision. |

***     Alfreda     Hill     ***     4/9/2019,     11:41:45     AM
PHONE   CALL[p]   -   File   is   marked   as   complete   and   is   now   in   review   with   the   UW.

***     Alfreda     Hill     ***     3/26/2019,     1:25:45     PM
NOTE[n]     -     Resubmitted.

***     Alfreda     Hill     ***     1/29/2019,     11:21:48     AM
PHONE CALL[p] - Sale date stills scheduled for 2/27/19. Mod was denied because the modified p&i will be     greater     than     the     current     p&i.

***     Alfreda     Hill     ***     1/22/2019,     3:23:03     PM
PHONE CALL[p] - Docs rec'd. UW said file is com

## COUNT 1

## REASONABLE RELIANACE ; DETRIMENTAL RELIANCE

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

43. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have an equitable right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the purported power of sale, or power to foreclose non- judicially, by the above specified Defendants, and each of them, no longer applies. Plaintiff are attempting to wrongfully foreclose in Rockingham County, Florida.. Richard St. Pierre is a proud military veteran and was deployed out of the country during many of the attempts to get a loan modification. Ms. De La Cruz reasonably relied on Wells Fargo Home Mortgage expertise in obtaining a loan modification.

44. Plaintiff requests that this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Defendants' actions in the processing, handling and attempted foreclosure of this deed involved numerous fraudulent, false, deceptive and leading practices, including, but not limited to, violations of State laws designed to protect borrowers, which have directly caused

Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Real Property remain in Plaintiff's possession during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void". Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law. Therefore, Defendant Fannie Mae cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, FANNIE MAE , cannot transfer an interest in Real Property, and cannot recover anything from Plaintiff with unclean hands.

45. Defendants, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Plaintiff's Real Property under the Mortgage/Deed of Trust on the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that Real Property is unique. Plaintiff from the inception of this loan was a victim of predatory lending and the Wells Fargo Bank, N.A. loan in which Plaintiff would never be able to repay. Plaintiff detrimentally relied and had reasonable reliance on the servicer to grant them a modification and made numerous attempts on to be turned down time and time again for unreasonable reasons. Plaintiff sites the following case law :

- 1908.Reasonable Reliance In determining whether Richard St. Pierre]'s reliance on the [misrepresentation/concealment/false promise] was reasonable, the Plaintiff must first prove that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action. If you decide that the matter is material, you must then decide whether it was reasonable for Richard St. Pierre to rely on the misrepresentation/concealment/false promise]. In making this decision, take into consideration [name of plaintiff]'s intelligence, knowledge, education, and experience. However, it is not reasonable for anyone to rely on a [misrepresentation/ concealment/false promise] that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation/concealment/false promise] if facts that are within [his/her] observation show that it is obviously false. New September 2003; Revised October 2004, December 2013
- There would appear to be three considerations in determining reasonable reliance.
- First, the representation or promise must be material, as judged by a reasonable

Person standard. (Charpentier v. Los Angeles Rams (1999) 75 Cal.App.4th 301, 312–313 [89 Cal.Rptr.2d 115].) Second, if the matter is material, reasonableness must take into account the plaintiff's own knowledge, education, and experience; the objective reasonable person is irrelevant at this step. Third, some matters are simply too preposterous to be believed by anyone, notwithstanding limited knowledge, education, and experience. (Blankenheim v. E. F. Hutton, Co., Inc. (1990) 217 Cal.App.3d 1463, 1474 [266 Cal.Rptr. 593].) See also CACI No. 1907, Reliance.

- Sources and Authority • "After establishing actual reliance, the plaintiff must show that the reliance was reasonable by showing that (1) the matter was material in the sense that a
- reasonable person would find it important in determining how he or she would act, and (2) it was reasonable for the plaintiff to have relied on the misrepresentation." (Hoffman v. 162 North Wolfe LLC (2014) 228 Cal.App.4th 1178, 1194 [175 Cal.Rptr.3d 820], internal citations omitted.) • "According to the Restatement of Torts, '[r]eliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material. . . . The matter is material if . . . a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action 1099 0023 in the transaction in question . . . .' But materiality is a jury question, and a 'court may [only] withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.' " (Charpentier, supra, 75 Cal.App.4th at pp. 312–313, internal citations omitted.) • "[T]he issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." (Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253], internal citations omitted.) • "[N]or is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. 'No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' " (Blankenheim, supra, 217 Cal.App.3d at p. 1474, internal citations omitted.) • "[G]enerally speaking, ' "[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information. It must appear that he put faith in representations that were 'preposterous' or 'shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth.' [Citation.] Even in case of a mere negligent misrepresentation, a plaintiff is not barred unless his conduct, in the light of his own information and intelligence, is preposterous and irrational. . . . The effectiveness of disclaimers is assessed in light of these principles. [Citation.]" ' " (Public Employees' Retirement System v. Moody's Investors Service, Inc. (2014) 226 Cal.App.4th 643, 673 [172 Cal.Rptr.3d 238].) • "[I]f the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery." (Thrifty Payless, Inc. v. The Americana at Brand, LLC (2013) 218 Cal.App.4th 1230, 1239 [160 Cal.Rptr.3d 718].) • "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." (Beckwith v. Dahl (2012) 205 Cal.App.4th 1039, 1067 [141 Cal.Rptr.3d 142].) • " 'What would constitute fraud in a given instance might not be fraudulent when exercised toward another person. The test

of the representation is its actual effect on the particular mind . . . .' " (Blankenheim, supra, 217 Cal.App.3d at p. 1475, internal citation omitted.)

- RAUD OR DECEIT CACI No. 1908
- 1101
- 0025


- The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home which is facing foreclosure and is now seeking damages.
- Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT
**(Against Defendant FANNIE MAE , Wells Fargo Bank, N.A. )**

46. Plaintiff re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

47. The terms of the mortgage contract are clear.

48. Pursuant to the PSA a loan modification can be obtained when there is a legitimate hardship. The St. Pierre's received one loan modification but the servicer is refusing to consider them for another until a year passes. In the meantime Fannie Mae is planning to foreclose on the St. Pierre's property.

49. Defendant FANNIE MAE was paid in full for their Accommodated capacity to the Tangible Note and Mortgage/Deed of Trust when it sold

and relinquished its interest in the Plaintiff's real property to FANNIE MAE . (Depositor).

50. Defendant FANNIE MAE failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Mortgage/Deed of Trust.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

## (ALL DEFENDANTS)

51. Plaintiff re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein.

52. Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

   a. Breach of full disclosure;
   a. Breach of good faith and fair dealing;
   b. Use of superior or influential position;
   c. Use of superior knowledge; and
   d. Failure to act in another's best interest

53. Defendant FANNIE MAE failed to disclose to Plaintiff that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to .

54. Defendant FANNIE MAE as beneficiary under the Mortgage having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium

55. After June 16, 2008 (closing), and unknown to Plaintiff, Defendant FANNIE MAE for payment rendered through a service release premium divested itself of their capacity under Accommodated Note but, did not comply with the covenants of the Mortgage/Deed of Trust specifically, Covenant 23 – Release. Plaintiff asks the court for equitable tolling as this was only discovered recently in the Declaration of Michael Carrigan expert witness.

56. FANNIE MAE , acting not in the best interest of the grantor of the Mortgage/Deed of Trust failed to adhere to their Fiduciary Duties. Defendant FANNIE MAE was to satisfy, release and reconvey the security instrument in order for Plaintiff to maintain clear and marketable title. As a result of its failure to comply with the Mortgage, Defendants caused a cloud on Plaintiff's superior claim to title. As a result, Plaintiff was harmed.

## FOURTH CAUSE OF ACTION
## QUIET TITLE

57. All Defendants named herein claim an interest and estate in the property adverse to Plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

58. All Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiff in that Defendants' asserts to be the owner of Tangible Note secured by the Mortgage/Deed of Trust to the Real Property, the subject of this suit.

59. The claim of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property,

or any part of the Real Property construed and hypothecated as "After Acquired Collateral" the Intangible Payment transferable record to the §1031 - Exchange.

60. The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these claims constitute a cloud on Plaintiff's title to the Real Property.

61. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the §1031 - Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and that all Defendants are stopped and precluded from asserting an unsecured claim against Plaintiff's Real Property Estate.

62. Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the property; and

63. Plaintiff request the court award Plaintiff costs of this action, and such other relief as the court may deem proper.

## FIFTH AUSE OF ACTION
## SLANDER OF TITLE

64. Plaintiff re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein

65. Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

a. There was a communication to a third party of;
b. A false statement;
c. Derogatory to another's title;
d. With malice; and
e. Causing special damages

66. There are no UCC 1 Financial Statement(s) perfecting a personal property interest regarding the purported true sale(s) and conveyance of credit swaps in 26 U.S. Code §1031 – Exchange of transferable record Smart Note personal property (payment intangible) in accordance of local law of jurisdiction.

67. There are no UCC 1 Financial Statement(s) perfecting personal property interest in the Accommodated Mortgage/Deed of Trust contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice to the world of the true capacity of the purported parties in the §1031 – Exchange in performance of the securities of Fannie Mae REMIC trust 2009-1.

68. (See Asset Securitization Comptroller's Handbook Nov. 1997 http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf )

69. Such instruments remained unrecorded as "Secret Liens" within the collateral file and was never submitted for recordation to perfect Defendant's rights to the Accommodated status Tangible Note and pledged Mortgage/Deed of Trust lien and the right to enforce an alternate means of collection.

70. Equitable rights to the Payment Intangible in the§ 1031 – Exchange do not extend to a lien on Real Property in accordance with statutory law.

71. In withholding such facts have potentially committed a grave error Slander of Title causing special damage.


**SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF**

72. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding his respective rights and duties in the subject note(s) and security instrument. Plaintiff requests a judicial determination of the rights, obligations and interest of the parties with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

74. Plaintiff should be the equitable owner of the Subject Property.

Plaintiff seeks to quiet title as of the date of the filing of this Complaint. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

## SEVENTH CAUSE OF ACTION
## CCPA

75. Plaintiff incorporates and realleges all of the allegations set forth in

Paragraphs 1 through 1- 101 as if fully set forth herein.

76. Title 15 USC Chapter 41 § 1461(g) states:

(g) Notice of new creditor
In addition to other disclosures required by this subchapter, no later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including -
(A) the identity, address, telephone number of the new creditor;
(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;
(D) the location of the place where transfer of interest in the debt is recorded; and
(E) any other relevant information regarding the new creditor.
Plaintiffs are entitled to actual and statutory damages as a result of the Defendants violation of the Consumer Credit Protection Act.

77. Defendants violated the CCPA by failing refusing to disclose the purported assignments/transfer of the Promissory Note and DOT.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF FEDERAL REGULATIONS, REGULATION X, , 12 C.F.R. § 1024.41 (b)(2)(i)(A)

78. Plaintiff incorporates all of the allegations contained in Paragraphs 1 through 104 herein as if fully set forth herein.

79. Code of Federal Regulations, Regulation X, 12 C.F.R. § 1024.41 (b)(2)(i)(A) requires that when a bank is made aware of a communication that can reasonably be deemed to be an application for loss mitigation, the servicer must promptly conduct a review to determine whether the communication represents a complete or an incomplete application. Re. X, 12 C.F.R. § expressly notes, "if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete." Reg. X, 12 C.F.R. § 1024.41 (b)(2)(i)(A).

80. Defendants FANNIE MAE and CitiMortgage, Inc.. did not conduct a review to determine whether the Plaintiff's submitted loan modification application represented a complete or an incomplete loan modification application.

81. Reg. X, 12 C.F.R. § 1024.41(b)(1) requires that when a servicer deems the loss mitigation application to be incomplete, the servicer must act affirmatively to complete the application. The servicer must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application.

82. Reg. X, 12 C.F.R. § 1024.41(b)(1) expressly notes, "[A} complete loss mitigation application means an application in connection with which a servicer has received all of the information that the servicer requires from the borrower in evaluation applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Reg. X, 12 C.F.R. § 1024.41(b)(1).

83. Defendants FANNIE MAE and CitiMortgage, Inc.. did not act affirmatively to complete the Plaintiff's loan modification application and did not exercise reasonable diligence to obtain any documents/information to complete the application.

84. Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) requires (1) of the servicer determine that the application for loss mitigation is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application, and (2) The servicer must provide a written notice to the borrower describing the documents and information needed to complete the application.

85. Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) expressly notes:

Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determine that the loss mitigation

application is either complete or inco0mplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the application date pursuant to paragraph (2)(ii) of this section.

86. Defendant FANNIE MAE and Wells Fargo Bank, N.A. did not send the Plaintiff a notice acknowledging that his loan modification application was complete within five days of receipt of the application and did not provide a written notice to Plaintiff or Plaintiff's counsel describing the documents and information needed to complete the application.

87. Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) requires the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) must include a reasonable date from the Bank by which the homeowner should submit the missing documents and information. Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) expressly notes, "[T]he notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower submit the documents and information necessary to make the loss mitigation application complete."

88. Defendants FANNIE MAE did not (1) provide the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B), and (2) did not provide a reasonable date from the Bank by which the borrower should submit the missing documents and information.

89. As a result of the aforementioned conduct, Defendant FANNIE MAE is in

violation of the Code of Federal Regulations , including but not limited to, Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A); Reg. X, 12 C.F.R. § 1024.41(b)(1); Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B); Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii), and is attempting to foreclose on the Plaintiff's property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiff from the type of abusive, deceptive, and unfair conduct  in which Defendant engaged. Defendant's unlawful conduct has caused Plaintiff's damages in an amount to be proven at trial. Defendants FANNIE MAE as Trustees of their respective securitized trusts are liable for the actions of the servicer because it is within the scope of said agency relationship.

### NINTH  CLAIM FOR RELIEF
### VIOLATIONS OF 15 U.S.C. § 1639g AND § 1641(f)(2)
### (Wells Fargo, and Their Agents)

90. Wells Fargo has failed and refused to confirm the identity of, and to provide the address and telephone number for the owner of the subject obligation, contrary to 15 U.S.C. § 1641(f)(2).

91. Wells Fargo has failed and refused to provide an accurate payoff statement, contrary to 15 U.S.C. §1639g.

92. Upon information and belief, whoever owns the loan has have considerable control over Wells Fargo by virtue of a Servicing Agreement that governs their relationship.

93. Upon information and belief, one of the very specific functions the Servicing Agreement was designed to cover was Wells Fargo's responding to requests for

information, notices of error, and requests for payoff statements.

94. Plaintiff attempted to amicably resolve the above-shown issues, prior to filing of this civil action.

95. Mr. St. Pierre is entitled to the following damages for violations of TILA by Wells Fargo, in the form of statutory damages of not less than $400 nor greater than $4,000 pursuant to 15 U.S.C. § 1640(a)(2)(A)(iv), and the costs of this action together with a reasonable attorney's fees[1] as determined by the court, pursuant to 15 U.S.C. § 1640(a)(3).

## TENTH CLAIM FOR RELIEF

## VIOLATION OF 12 U.S.C. § 2601 *et seq*
## (Wells Fargo and Their Agents)

96. Mr. St. Pierre alleges that Wells Fargo is servicer of his "federally related mortgage loan".

97. Mr. St. Pierre shows that his loan is a federally related mortgage loan", because it is a loan that: "(1) involves a 1-4 unit residential property, and (2) was made by a federally insured institution, guaranteed or insured by a federal agency, sold or intended to be sold to a federally related entity, or made by a creditor who has made a large number of residential loans". 12 U.S.C. § 2602(1); 12 U.S.C. § 2605(e).

98. Mr. St. Pierre alleges that Wells Fargo is a "creditor" for purposes of RESPA, because Wells Fargo "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance

---

[1] The attorneys fees would only be if and when Mr. St. Pierre locates and retains competent legal counsel, of which she continues to interview.

charge is required, and (2) is the entity to whom the debt arising from the consumer credit transaction is payable".

99. Mr. St. Pierre further alleges that his QWR was in writing, and his inquiry was related to the "servicing of the loan", which is defined as 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan...'" 12 U.S.C. § 2605(i)(3).

100. Mr. St. Pierre's QWR was pursuant to and in compliance with 12 U.S.C. § 2605(e)(1)(B); the request was made in writing, stated the Borrower's name, the property address, the loan number, and that the inquiry was related to the servicing of his loan, 12 U.S.C. § 2605(e)(1).

101. Mr. St. Pierre alleges that Wells Fargo committed prohibited acts within 12 U.S.C. § 2605(k) Servicer prohibitions, in that Wells Fargo "failed to timely respond to Mr. St. Pierre's requests to correct errors relating to ... final balances for purposes of paying off the loan, and/or avoiding foreclosure, and/or other standard servicer's duties.

102. Mr. St. Pierre alleges that Wells Fargo committed prohibited acts within 12 U.S.C. § 2605(k), in that Wells Fargo failed to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(emphasis added).

103.    Sections 1024.35 (Notice of Error) and 1024.36 (Request for Information) of Regulation X were both promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action.[2]

104.    The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

105.    Mr. St. Pierre alleges that Wells Fargo as servicer has failed and refused to comply with 12 C.F.R. § 1024.36(d) in that Wells Fargo failed and refused to provide adequate responses to numerous requests for information within the required timeframe, in violation of 12 U.S.C. § 2605(k)(1)(E).

106.    Further, Wells Fargo has failed, and refused to comply with 12 C.F.R. § 1024.36(d)(2)(i)(A) in that Wells Fargo did not the address or provide relevant contact information for the "owner" of Plaintiff's Promissory Note within ten (10) days after receiving such request, in violation of 12 U.S.C. § 2605(k)(1)(D).

107.    Mr. St. Pierre is entitled to actual damages as a result of Defendants' failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), including but not limited to: photocopying costs and postage costs incurred as a result of having to send additional correspondences due to

---

[2] *See 78 Fed. Reg. 10696*, 10714, FN. 64 (Feb. 14, 2013)("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). *See also 78 Fed. Reg.* at 10737, 10753 (the CFPB noting that Section 1024.35 and 1024.36 implement Section 6(k)(1)(C) and 6(k)(1)(D) respectively).

Wells Fargo's failure to adequately respond to Plaintiff's requests for information.

108.    Mr. St. Pierre is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of Wells Fargo's pattern or practice of noncompliance with Regulation X and RESPA.

109.    Wells Fargo has also violated Regulation X with respect to numerous loans it services, including but not limited to, the following loans:

(1) With respect to loan number ******9791, WFHM violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

(2) With respect to loan number ******3460, WFHM violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

(3) With respect to loan number ******0479, WFHM violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

110.    Mr. St. Pierre is entitled to the costs of this action, together with a reasonable attorney's fee as determined by the court, pursuant to 12 U.S.C. § 2605(f)(3).

## ELEVENTH CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE PRACTICES
### (Wells Fargo,

111.    Pursuant to the Fair Business Practices Act (FBPA),[3] unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or

---

[3] The FBPA creates a separate and distinct cause of action for which a consumer damaged as a result of a breach of the FBPA has an independent right to recover regardless of any

practices in trade or commerce declared unlawful.  (4 Ga. Jur. **Business Torts and Trade Regulation** § 1:7).

112.   "Consumer acts or practices" means acts or practices intended to encourage consumer transactions. (O.C.G.A. § 10-1-392(a)(7)).

113.   "Consumer transaction" means the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes (O.C.G.A. § 10-1-392(a)(10)).


<u>TWELVTH  CLAIM FOR RELIEF</u>
<u>CONVERSION, TRESPASS AND NUISANCE</u>
<u>(Against all Defendants)</u>

114.   Mr. St. Pierre alleges that defendants' actions result in conversion, trespass, have been and are a nuisance.[4]

115.   "Any unlawful interference with, or invasion of, a property right is a trespass.

116.   The Code defines 'trespass' in its broadest sense as 'any misfeasance, transgression, or offense which damages another's health, reputation, or property.'"

---

other theory of recovery (4 Ga. Jur. **Business Torts and Trade Regulation** § 1:7).

[4] "Typical of the torts for which such damages may be awarded are assault and battery, <u>libel and slander, deceit</u>, seduction, alienation of affections, malicious prosecution, and <u>intentional interferences with property</u> such as trespass, private nuisance, and conversion. But it is not so much the particular tort committed as the defendant's motives and conduct in committing it which will be important as the basis of the award." **W.L. Prosser and W.P. Keeton**, supra, pp. 8–11. (Citations omitted and emphasis supplied.)
**Colonial Pipeline Co. v. Brown,** 258 Ga. 115, 122, 365 S.E.2d 827, 832 (1988).

117.  New Hampshire has held that "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."

118.  Mr. St. Pierre alleges that he himself has suffered from discomfort, loss of peace of mind, unhappiness, and annoyance caused by the nuisance in that he is elderly, disabled, and the continued acts to foreclose after the loan was legally rescinded, and with defendants' actual knowledge that Mr. St. Pierre had been approved for reverse mortgage, yet they refused him the payoff amount.

119.  Mr. St. Pierre alleges that he has been financially exploited for defendants' own monetary gains, which has been a nuisance and a trespass.

120.  Wells Fargo, all had actual knowledge that Mr. St. Pierre had legal right to, and timely and legally did rescind the loan, and the loan had been rescinded, Mr. St. Pierre alleges that their actions rose to the level of nuisance that Georgia statute recognizes as a tort.

121.  For example, Wells Fargo, repeatedly attempted foreclosure while in the middle of civil litigation, with actual knowledge that any foreclosure would be overturned.

122.  Mr. St. Pierre alleges that he had, seven (7) times attempted modification in order to remain in his home after Wells Fargo refused to acknowledge rescission, the last such attempt, he was approved for $4500 monthly, but three days later, received a letter from Wells Fargo denying the modification.

123.  Mr. St. Pierre was repeatedly refused the payoff amount from Wells Fargo and their agents, for the entities who approved Mr. St. Pierre for loan modification.

124.   Defendants have continued with the attempts to foreclose, while the previous litigation continues in front of U.S. Supreme Court, as they plan to foreclose and exercise power of sale June 05, 2018, with actual knowledge that the Supreme Court has the case.[5]

125.   Mr. St. Pierre alleges that defendants knowingly, willingly, wantonly, showed misfeasance and malfeasance in their actions.

126.   Mr. St. Pierre alleges that defendants; actions were intentional and malicious.

127.   Mr. St. Pierre alleges that defendants' actions were meant to and did interfere with Mr. St. Pierre's happiness, enjoyment of his property and cost him money.

128.   As a direct and proximate cause of defendants' actions/inactions Mr. St. Pierre has been harmed, injured, and been made to suffer damages, he will suffer far into the future from defendants' actions.

**COUNT X111**
**ABUSE AND EXPLOITATION OF ELDERLY ADULT**
**AND CONSPIRACY TO EXPLOIT**

129.   Mr. St. Pierre contends that he is over the age of sixty (60) years, therefore, is an older individual (42 U.S.C.A. § 3002).

130.   Mr. St. Pierre alleges that defendants' actions constituted exploitation and financial exploitation, as defined by 42 U.S.C.A. § 3002 (West).

131.   Mr. St. Pierre alleges that defendants knowingly, willingly, wantonly, and malicious intent, failed and refused to follow New Hampshire's laws on elder abuse.  Mr. St. Pierre was born on 08/14/1940 and is 79 years old.

132.   Mr. St. Pierre alleges, that the banks attorney's aided and abetted in the scheme to deprive the Plaintiff's of their estate .

133.   Mr. St. Pierre alleges that depriving him of his property, was a form of abuse

---

[5] .

against Mr. St. Pierre, pursuant to the definitions of federal statute 42 U.S.C.A. § 3002 (1), (15), (16), (18)(A) and (40), (West).

134. Defendants knowingly, willingly, wantonly, and with malfeasance, inflicted psychological harm upon Mr. St. Pierre. or the knowing deprivation of goods or services that are necessary to meet essential needs or to avoid physical or psychological harm. (42 U.S.C.A. § 3002 (West)).

135. Defendants knowingly, willingly, wantonly, and with malfeasance, deprived Mr. St. Pierre of finances, through the theft of their crop revenues and oil and mineral revenues. .

136. Defendants knowingly, willingly, wantonly, and with malfeasance exploited, and financially exploited Mr. St. Pierre through a fraudulent and illegal, unauthorized, and improper acts.

137. Defendants, who had actual knowledge of Mr. St. Pierre's age, illnesses, financial situation, and plans for obtaining a modofication, exploited, financially exploited, and abused Mr. St. Pierre for monetary or personal benefit, profit, or gain, without fear or care of the consequences to Mr. St. Pierre or to themselves.

138. As a direct and proximate cause of these defendants' intentional and malicious, actions/inactions, Mr. St. Pierre has been made to suffer, he suffers now, and will suffer far into the future.

WHEREFORE, Mr. St. Pierre Prays for the relief in his Final Prayer for Relief.

.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiff pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff be awarded judgment:

• Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties;

• Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiff and against Defendants and all claiming by, through or under them;

• A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

• Pre- and post-judgment interest at the maximum rate allowed by law;

• Attorney's fees;

• Monetary relief over $100,000 but not more than $2,000,000,00; and

• Such other and further relief at law and/or in equity to which Plaintiff may be justly entitled including but not limited to damages within the jurisdictional limits of this

Court, together with pre-judgment and post-judgment interest as are allowed by law.

Dated:   Nov. 18, 2019.

RICHARD ST. PIERRE, IDA ST. PIERRE

603 - 772—8149

## **VERIFICATION**

I, RICHARD ST. PIERRE, IDA ST. PIERRE, Pro per, am the Plaintiff in the above entitled matter and have personal knowledge to testify to the matters stated therein. I have read the facts and allegations and declare under penalty of perjury in and for the State of New Hampshire that the above is true and correct to the best of my knowledge.